## UNION ASSUR. SOC. LIMITED, OF LONDON, ENGLAND, v. TOLIVAR.

### No. 10795.

Circuit Court of Appeals, Fifth Circuit.

March 10, 1944.

---

Austin Y. Bryan, Jr., of Houston, Tex., for appellant.

Lieut. Raymond L. Murray, of Port Arthur, Tex., and Murray McCoy and John H. Benckenstein, both of Beaumont, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Union Assurance Society, Limited, of London, England, issued to Kathryn Tolivar two standard forms of fire insurance policies, the first being for $20,000 and covering a two-story building, and the second for $7,000 and covering the personal property in the building, located in the City of Beaumont, Texas.

On the 5th day of August, 1941, and while the policies of insurance were in full force and effect, the building and contents were totally destroyed by fire.

Insurance Company denied liability under both policies of insurance for the reason:

(1) that Kathryn Tolivar was not the sole and unconditional owner of the property;

(2) that Kathryn Tolivar had concealed and misrepresented in writing or otherwise that she was the sole and only owner of the property;

(3) that Kathryn Tolivar had notice of foreclosure proceedings against the property and failed to notify Insurance Company; and

(4) that the personal property in the building was attached to and a part of the realty and Insurance Company was not liable for personal property loss.

The court, trying the case without the intervention of a jury, returned a verdict for Kathryn Tolivar on both policies and for the aggregate sum of $27,000.

The property in question consisted of three lots and a two-story brick building thereon, and the contents were machinery, equipment and other personal property. On December 9, 1938, F. F. Tolivar conveyed to Kathryn Tolivar his interest in the property in question. On August 6, 1939 C. W. Howth, independent executor of the estate of C. R. Tolivar deceased, also conveyed to Kathryn Tolivar all the title and interest of the Tolivar estate to the property. At the time of the conveyance it was subject to a vendor's lien and deed of trust in favor of M. J. Ebberts and wife, which liens had been foreclosed on July 29, 1937, under an agreement that no order of sale and no writ of execution were to be issued for three years, provided that certain payments on the indebtedness were made to Ebberts and wife.

Harris Cooper was the local recording agent of the Insurance Company and was instrumental in having the insurance rating on the property reduced by the Insurance Commissioner of Texas, and thereafter Kathryn Tolivar directed him to write the

insurance covering the property; Cooper first made the policies payable to the estate of C. R. Tolivar, but Mrs. Tolivar informed him that she was the owner of the property, and by riders the insurance was on July 5, 1941 made payable to her.

Cooper, the recording agent of the Insurance Company, had knowledge of the existence of a judgment against the estate of C. R. Tolivar; he knew that Mrs. Tolivar was negotiating for a settlement and he even knew the amount of the judgment; he was advised that Mrs. Tolivar was trying to force an audit to obtain credits for payments she had made on the judgment, and that a loan was sought to pay the taxes and to get a release of the judgment. Mrs. Tolivar further advised him that Ebberts and wife were trying to take the property and he knew about the injunction that had been issued on the first notice of sale. Mrs. Tolivar had given to Cooper from time to time a full history of the property—the debts, the unpaid taxes, the first foreclosure suit, and her assumption by deed of all the indebtedness on the property. While in possession of such knowledge and facts Cooper made and delivered the insurance policies, collected from Mrs. Tolivar the premiums, and remitted the payments to Insurance Company.

The trial judge in casting up the facts found:

" * * * that Kathryn Tolivar was the sole and unconditional owner of the property at the time of the fire and owned the fee simple title thereto within contemplation of the policies in question.

*     *     *     *     *

"However, I am going to find as a fact that Mrs. Tolivar did not give agent Cooper notice of the fact that notice of sale pursuant to such foreclosure proceedings had been served upon her just prior to the fire. However, I am finding further as a fact that she did notify agent Cooper that she had run into another 'stump', and told him in connection therewith 'it looked like I would have to get another injunction,' and I think that in view of the prior disclosures made by her to agent Cooper and their discussion of the Ebberts foreclosure proceedings that this was tantamount to and in effect was notice of the developments of foreclosure in the matter.

"It is my further finding that with full knowledge of the facts of the situation as disclosed by Mrs. Tolivar to agent Cooper that by accepting and retaining the premiums on such insurance the company is estopped from claiming this affirmative defense.

"I am finding further as a fact that Mrs. Tolivar made no misrepresentations whatsoever as to the character of the property insured—that is, as to whether or not it was real or personal, and that she had nothing to do with the segregation of the property as real or personal, but that this was done entirely at the instance of and upon the initiative of the agent, Cooper, who wrote the policies and that he, as representative of the company, having elected by his own volition to segregate and treat the property as real and personal that the company cannot complain of this, and that judgment for the full amount should go to the plaintiff.

*     *     *     *     *

"While the deed from C. W. Howth recited only a nominal consideration for the conveyance of the title to this property, yet I find from the entire record that the real consideration for the same was the indebtedness existing against the property in behalf of Ebberts and the taxes owing to the various taxing authorities of Jefferson County. * * *."

■ C. W. Howth, as an independent executor, has all the authority which could be conferred on an administrator by the probate court. Article 3436, Texas Revised Civil Statutes; Cockrell v. Lovejoy, Tex. Civ.App., 44 S.W.2d 1040.

■ Kathryn Tolivar was the owner of the property described in the policies and her ownership was not limited or affected by any condition. United States Fire Insurance Company of N. Y. v. Farris, Tex. Civ.App., 297 S.W. 575; Newark Fire Insurance Company v. Wood, 3 Cir., 81 F.2d 742; Rochester German Insurance Company v. Schmidt, 4 Cir., 162 F. 447.

■ Harris Cooper, the local recording agent of the Insurance Company, had authority to represent the Insurance Company and where he waived conditions and provisions in the policies, such waivers were binding on Insurance Company. Vernon's Texas Annotated Revised Civil Statutes, Article 5062a, §§ 1–13; Home Insurance Company of N. Y. v. Roberts, 129 Tex. 178, 100 S.W.2d 91; Glen Falls Insurance Company v. Bendy, Tex.Com.App., 58 S. W.2d 1; New York Fire Insurance Com-

pany v. Read, Tex.Civ.App., 138 S.W.2d 138.

An insurance company which issues policies of insurance and accepts premiums thereon and retains such premiums with knowledge of existing facts, which if insisted on, would invalidate the policies, waives conditions thereof inconsistent with the facts so known and is estopped from thereafter asserting such conditions in avoidance of liability. Southern Underwriters v. Jones, Tex.Civ.App., 13 S.W.2d 435; Ætna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121; Home Insurance Co. of N. Y. v. Young, Tex. Civ.App., 97 S.W.2d 360; American Central Ins. Co. v. Robinson, Tex.Civ.App., 219 S.W. 277.

We are in accord with the learned trial court's holding that the judgment should go for the insured. There being no reversible error in the record, the judgment is affirmed.